Louis E. Laskey
vs.                    No. 82084.
Samuels Millinery, Inc.

July 5, 1932.

BAKER, P. J. Heard jury trial waived.

In this case the plaintiff, a real estate broker, is seeking to recover a commission for his services in attempting to bring about a sale or assignment of a certain leasehold interest controlled by the defendant. The plaintiff's claim is that he produced a purchaser able, ready and willing to go through with the transfer and that the failure to consummate the transaction was due to the fault of the defendant. The latter, on the other hand, urges that the arrangement made with the plaintiff as to a commission was definitely on the condition that the consent in writing of the landlord must first be obtained, and as this was

never done and as, for this reason, the transaction fell through, therefore it is not liable to the plaintiff.

The law generally and in this State seems to be well settled that ordinarily a broker has performed his duties so as to recover his commission if he brings to the seller a purchaser ready, willing and able to consummate the transaction on the seller's terms.

Vol. 9, C. J., p. 590;
*Cavenaugh* vs. *Conway*, 36 R. I. 571.

It is equally clear, however, that the seller and the broker may enter into some special contract or understanding, the terms of which will have to be complied with before the latter is entitled to any payment.

*Morrow* vs. *Gledhill*, 43 R. I. 277;
*Tarbell* vs. *Bomes*, 48 R. I. 86;
*Manfredi* vs. *Boss*, 50 R. I. 125;
*Douglas* vs. *Matzner*, 51 R. I. 1;
Vol. 9 C. J., p. 592.

The questions presented, therefore, upon the evidence in this case, seem to be, first, as to whether or not there was any special arrangement between the parties whereby the plaintiff's commission was dependent upon obtaining the consent of the landlord; and, secondly, if so, whether that consent was actually ever given.

The transactions involved herein took place in the summer of the year 1929. The testimony is undisputed that the parties agreed that the plaintiff's commission, if he should receive any, was to be $2,000. This understanding was apparently had about the middle of September of that year.

It is clear from the evidence that negotiations concerning the transfer of defendant's lease was first undertaken by the plaintiff during July. There is no question raised by the defendant concerning the purchaser produced by the plaintiff. Unquestionably he was ready, willing and able to go through with the transaction. During August and September negotiations

and interviews were had between the plaintiff, the defendant, the landlord and, to some extent the prospective purchaser.

After carefully considering the testimony, the Court is of the opinion that the plaintiff knew before he had his understanding with the defendant concerning the amount of his commission, that the consent of the lessor would have to be obtained before the lease could 'be assigned or transferred, and that this understanding was made dependent upon the obtaining of such consent.

The parties involved were business men of wide experience. It is very common to insert in long term leases some such provision regarding the consent of the lessor before there can be any transfer or assignment of the leasehold. There is testimony in the case which leads the Court to believe that the plaintiff and Mr. Samuels saw the lessor in the latter part of August in relation to obtaining the latter's consent. The plaintiff and Mr. Bluestein, one of the purchasers, had an interview with the lessor, Mr. Sundlun, early in September. The purchaser's attorney, Mr. Mintz, testified that either the plaintiff or Mr. Bluestein informed him that the consent of the lessor to the assignment of the lease was necessary. This was before the parties came to Providence in the latter part of September to complete the transaction and there is no evidence that Mr. Mintz had ever conferred with the landlord about the matter prior to this date.

In view of all these conferences and negotiations, it is very difficult for the Court to believe that the matter of obtaining the lessor's consent was not considered and discussed.

The plaintiff argues that the lessor, Mr. Sundlun, was only consulted as the defendant's attorney and while perhaps it is true that he did occupy the dual capacity of lessor and attorney for one of the parties, nevertheless the Court feels quite satisfied from the evidence presented that in this matter he was acting chiefly for himself as landlord.

The plaintiff then argues that if the arrangement entered into by the parties was dependent upon the obtaining of the lessor's consent to the transfer, then the evidence presented shows that such consent was actually obtained.

The lease in question calls for consent in writing and it is undisputed that Mr. Sundlun never executed any instrument giving his consent to the transfer. It is true that in some interview with the plaintiff and Mr Samuels on or about September 21st, Mr. Sundlun did make certain notes regarding the consummation of the transaction and did arrange for a conference a few days thereafter. This meeting was held September 23rd in Mr. Sundlun's office. At that time, the testimony shows that Mr. Samuels, as apparently had been his custom, had gone to New York on business. It is a fact that at the meeting in Mr. Sundlun's office at this time, when the purchaser and his attorney were present, certain papers were drawn up looking toward the assignment of the lease. It is, perhaps, somewhat ' difficult to understand why this should have been done if the parties did not have in mind that at some period in the near future the transaction might be completed.

The defendant and Mr. Sundlun urge that they were merely accommodating the purchaser and his attorney so that everything would be in readiness in case the parties decided to go through with the matter. The plaintiff intimates that Mr. Samuels' absence was pre-arranged between himself and Mr. Sundlun, but after carefully considering the testimony, the Court does not find this to be so.

After weighing the evidence, the Court is of the opinion that the lessor, Mr. Sundlun, never did actually give his consent to the assignment of the lease and that, in any event, such consent, to be valid and binding, had to be in writing.

The plaintiff contends that it was to the advantage of the defendant that the transaction be not carried through and that this is why the defendant made no serious attempt to obtain the lessors' consent.

The reasons why Mr Sundlun did not agree to the assignment of the lease are, perhaps, not very material. The evidence does show that later on this leasehold interest held by the defendant was assigned with the consent of the lessor to another person who was also a tenant of Mr. Sundlun. It is very possible that in this second transfer the defendant obtained some advantage. It is true that the assignment ultimately was made for some $1,500 less than plaintiff's customer was willing to give for the lease, but the defendant did receive another lease of a smaller store in the same general neighborhood at a lower rental. Be this as it may, the Court is satisfied that the real impelling motive in bringing about the refusal of Mr. Sundlun to consent to the transfer to the plaintiff's customer was the fact that he had in view a much more attractive proposition from the person to whom the leasehold was ultimately assigned. Under this second arrangement, Mr. Sundlun, the lessor, bettered himself financially to a considerable extent, and this, in the judgment of the Court, is the real reason why he refused to consent to the assignment to plaintiff's client.

For the reasons above indicated, the Court gives decision for the defendant.

For plaintiff: Tillinghast, Morrissey & Flynn.

For defendant: Baker & Spicer.